Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Welcome to the Fourth Circuit. We have three cases on for argument this morning. Before we get started, I want to welcome District Court Judge Mark Walker. Thank you for joining us, sir. Thank you. And Judge Traxler, I believe, is, I hope, is on the line somewhere. Can you hear us, Judge Traxler? I can, Chief Judge. I appreciate your acknowledging me. Thank you for being with us this morning. Our first case is United States v. Davis. And, Mr. Stone, whenever you're ready, sir. Thank you, Your Honor. May it please the Court, my name is Robert Stone. I represent Curtis Davis. Mr. Davis is appealing the District Court Judge's ruling, denying his motion to suppress. With regard to Mr. Davis's case, it's kind of a unique set of factual circumstances. The ATF was conducting an investigation of a gentleman named Derek Huff. And Mr. Huff, in West Virginia, if someone makes multiple firearms purchases at the same time, there's a notification that goes out to the local state police barracks. So it appears that the state police received a notice and then they notified the local ATF branch. But anyway, the officers were conducting surveillance of a local gun shop called Ray's Guns. And they observed Mr. Huff go to the gun shop. They knew he was scheduled to pick up three Taurus pistols. So the officers observed from a distance Mr. Huff arrived at the gun shop in what the officers determined to be a rented Dodge Durango. And they also observed that there was another gentleman in the front passenger seat of the vehicle. So after Mr. Huff left the gun shop, he traveled to a local Sheetz, which is a convenience store. And the officers indicated they observed a third person get into the rear of the Durango for a brief period of time and exit and drive away in a Honda. Now, there's no reference to any attempt being made to stop this vehicle. So the Durango pulls out and it starts driving towards Bower Road, which is in a rural area. I'm sorry to interrupt you. And certainly you can argue your case the way you want to. But I think we're generally familiar with the background facts. It might be helpful if you spent your time talking about the issues that led up to the seizure of the cell phone in the home. Unless there's something about these background facts that would inform that. Your Honor, just cutting to the chase, Officer Cox obtained a search warrant. He prepared the affidavit and Deputy Dobson from the Berkeley County Sheriff's Department actually submitted it to Magistrate Shull in Berkeley County. And the affidavit made reference to Officer Cox's investigation, the subsequent traffic stop of the vehicle being driven by Mr. Huff, what the officers observed and their belief that there would be evidence at Orville Darby's residence. Mr. Darby was the passenger in the front seat, but that there would be evidence that that residence of violations of West Virginia firearms statute violations, basically felon in possession and prohibited transfers of firearms. And you don't take issue with the warrant itself, do you? Well, Judge, we contend and I argued below and reiterate on this appeal that Mr. Davis contends that this search warrant affidavit does not establish probable cause to search Mr. Darby's residence at 303 Salem Church Road. You know, there's a it's kind of weird that the, you know, the ATF's contention was that because Mr. Huff picked up the guns, he put them in the back of the car. I mean, they're still in the plastic cases they come with that. They contended that somehow Mr. Darby in the front passenger seat constructively possessed the firearm. So that was the whole theory of contending that there would be some evidence of a crime at Mr. Darby's residence. Now, within the affidavit, the agents make reference to Mr. Huff informing them that he, although he says his residence, is it the 1477 Bower Road address where this initial traffic stop occurred? He claims that he was in the process of moving to Mr. Darby's residence, and he contended that he had moved some of these firearms that he purchased to Mr. Darby's residence. Why isn't that good enough? Well, Your Honor, technically, Mr. Huff, he wasn't a prohibited person, Your Honor. He had gone to the gun shop that day and picked up three firearms, and that means he passed the procedure. He filled out the 4473, the gun shop owner ran the check, and he was authorized to purchase the firearms. Now, the officer contends that, well, we have evidence of straw purchases, and then the officer makes reference to Mr. Huff stating that he had taken a controlled substance that day, that he had used heroin. But for all practical purposes, at least as far as eligibility to purchase a firearm, he bought three at a gun shop that day, so he's passing the federal background check. So he didn't have a felony conviction at that point, so he's not a prohibited person. So the mere fact that he moves, he says he moves from one residence to another and takes… What about the fact that, you know, he said that the firearms would be found at this home where Darby lived, and Darby was a felon, so, I mean, that seems to be sufficient? Well, Your Honor, it's not in the search warrant affidavit, but in the cell phone affidavit, which is in the appendix, page 88, Agent Cox references that when they spoke to Darby at the scene, he said, I'm a prohibited person, those are not my guns. But I guess our contention was, how can you make the leap in this affidavit that we're going to believe Mr. Huff, and because Mr. Huff says he transported these guns that he legally purchased, that that would be evidence of a crime? Well, I mean, it may not be sufficient for a jury, but for a warrant, I mean, why couldn't the officers rely on that statement, notwithstanding Darby's contention that he was a prohibited person? Well, Your Honor, and again, I didn't raise, like, make a Franks issue below, but in, I think it's page 39 of volume 2 of the appendix, there's a summary that Agent Cox created of his interview with Mr. Huff during the time period subsequent to the detention or arrest and prior to the search warrant. And, you know, Huff's all over the place, but he notes Huff claimed the firearms are still his. So, I mean, if there's not been a transfer, and, you know, I mean, merely because you live in a residence, I guess there could be some claim that Darby's violating the law because Huff brought these firearms to the residence. But he says he, I think in the affidavit, he just did it that day, and we know that Darby is with Huff in custody. Did Huff not tell law enforcement that he had been purchasing firearms for a number of other individuals, and thus there is evidence of firearms trafficking, not just this straw purchase issue? He says he did, but, I mean, they don't produce anybody that says, oh, yeah, you know, Huff bought these firearms and gave them to me. Do they need to for purposes of probable cause for a search warrant? Well, I think that going back to the issue of probable cause for search of this residence, I mean, the question is, is there going to be evidence of a crime at this particular residence? I mean, taking it away from what Mr. Huff was doing, what he was stopped for, or what he said, there's really no effort by the officers to really try to corroborate anything to establish that there would be evidence of this offense or any offense at the 303 Salem Church Road. And, I mean, I guess if you just glanced at it on his face, but if you really look at it and carefully review the affidavit, if Huff's not a prohibited person, and they really can't verify or corroborate that what Huff's even telling them is true, because it's, I mean, from looking in between the time period of his detention and the search warrant, it looks like Huff's kind of all over the place as far as acknowledging involvement, then denying at one point he asked for a lawyer, but I just, I don't see how we can assess much credibility to Mr. Huff. And even if we do, at that point in time, at least on that day, he's still arguably legally purchasing firearms. Mr. Stone, Mr. Stone, I'm sorry to interrupt you. This is Judge Draxler. Didn't Mr. Huff provide a false address on the federal firearms form? Well, Your Honor, that is referenced in the affidavit, but that was the address on his driver's license, the address on his identification. So that was the address he continued to use. I mean, I guess technically that could be a violation when you fill out the 4473. I mean, from looking at the affidavit, it's kind of hard to say whether or not Huff actually established a new residence at the 1477 Bower Road where he was staying. And clearly, I don't think you could say he established a new residence at the 303 Salem Church Road where he was moving, but that was the address on his driver's license. So I don't – again, I'm not sure if that in and of itself would be indicative of any kind of firearms trafficking, and I clearly don't – clearly that wouldn't support probable cause for the search warrant at Mr. Darby's residence at 303 Salem Church Road. Stone, can I – let's assume for the moment that we just don't agree with you, we think that the warrant was sufficient, then the issue becomes what could the officers seize at the residence? So now we're dealing with the cell phone that Mr. Davis says was his, and apparently the officers accepted that explanation. So what's your argument for why they couldn't seize that phone? Well, Your Honor, in attachment A to the search warrant, the officers included firearms, ammunition, which I think that would be within the purview of the affidavit, but then controlled substances and other items criminally possessed, and then it goes on down subsection D, cellular telephones. So we look at the affidavit. Clearly, there's not probable cause to search that residence for controlled substances based on this affidavit, and there's no reference in this affidavit to a cell phone having evidence to establish that Mr. Darby somehow violated the West Virginia firearms statute. But with respect to the drug zone, weren't they in plain view? Well, Your Honor, when the officers went into the residence, they indicate that Mr. Davis took off, they detained him, and then I think they were searching through the residence, and then one of the officers noticed him. It looked like he was pushing a baggie into a HVAC vent, and then he was formally cuffed and searched. But, I mean, that's after they executed the warrant, and if we go back to probable cause for the warrant, in the affidavit, Agent Cox makes reference to there were a couple of baggies in the car that were torn and a torn up piece of currency. But if we assume that the warrant is good as to the firearms trafficking, once Mr. Davis takes the actions that he takes, why is that not insufficient to determine that the substances were seized lawfully? Well, Your Honor, if the court says that the search warrant's valid, there was sufficient probable cause, I mean, I don't think I have much of an argument for what they found in the house if the court determines that that's lawful. However, there is a reference, the officer sees three phones, you know, a cell phone in and of itself, there was an iPhone that Mr. Davis identified as his, but clearly there's nothing inherently criminal or anything within that phone that would be indicative or to show that it would have evidence, number one, of these firearm offenses for which they were there. And, you know, drug, I mean, he wasn't using the phone when they called, I don't, they didn't even know who Mr. Davis was, I mean, he was at the residence, clearly not the target of this investigation. But, I mean, if, you know, again, our contention is that this is an overly broad warrant, it wasn't supported by probable cause for, we contend the firearms, clearly not the drugs, and clearly just not a cell phone, it's not something that's inherently indicative of criminal activity. But you do not believe that cell phones can be inextricably linked to evidence of firearms trafficking. I mean, unless somebody, unless there's some demonstration that there would be, the officer would have probable cause to believe that there would be evidence to support that charge on the phone, I mean, this shouldn't have been seized. I mean, you know, it seems like there's a standard group of items that, no matter what, automatically get seized. And, you know, this was a straw purchase case where the officers knew from the gun shop what was going on, they stopped the car, they saw the guns, they knew who everybody was. You know, how that turns into a basis to seize somebody else's cell phone who they don't even know about at the house, I mean, although they say they observed the drugs, there's no contention that Mr. Davis was in possession of any firearms. So, you know, we could say that, well, what would be the justification to search his phone for firearms if, when you executed the search warrant, he didn't have one on him? So, but thank you, Your Honor. Chief Judge, can I ask Mr. Stone a question before he sits down? Mr. Stone, my question has to do with the cell phone, Davis' cell phone. My question is, what evidentiary harm did the seizure of that phone cause you? Well, Your Honor, within the cell phone, there was evidence of drug activity, and I think there was a video of somebody discharging a firearm behind the residence. I think it was the Bower Road residence, but discharging a firearm looked like a pond area. So, I mean, it was evidence that ultimately, if the case had proceeded to trial, would have been detrimental to Mr. Davis' position. Thank you. Thank you, Chief Judge. Certainly. Thank you, Mr. Stone. You have some time left for rebuttal. Ms. Harney? My name is Eleanor Harney, and I represent the United States today. Rather than getting into a detailed factual recitation, I'll go ahead and hop to the issues that the court's raised. So, as an initial matter, the government's position is that the initial search warrant issued by the magistrate judge clearly contains sufficient facts upon which a magistrate could determine the probable cause existed to search the Salem Church residence. And specifically, looking at firearms trafficking and the straw purchase in general, we can debate as to what Mr. Huff's exact residence was. However, the address on his driver's license is, as far as law enforcement was aware, not the address at which he was residing. And further, Mr. Huff admitted during the interview that seven of the firearms he had purchased were for other people. When you go to purchase a firearm and you fill out a form 4473, question, I believe it's 11, asks you, are you the true purchaser of this firearm? And if you want to leave with a firearm, there's only one answer to that question, and the answer is yes. So, in order for Mr. Huff to go into an FFL and purchase those firearms for other people, he necessarily had to make a false statement on the form 4473. Moreover, Your Honor, looking to the facts surrounding, well, leading up to Mr. Huff's interview, after Mr. Huff and Mr. Darby were observed at the sheets, law enforcement surveilled them going to the Bowers Road residence. And at that point, law enforcement attempted to make contact. And rather than getting out to speak with law enforcement, Mr. Huff attempted to flee. In the record below, there's argument about whether or not he believed he was being robbed. My understanding is that the ATF vehicles were unmarked, but they did yell, law enforcement, and they did turn on their lights, and Mr. Huff attempted to flee. And once they stopped him, they did find the three firearms from the FFL behind the driver's seat. Now, turning to corroboration of Mr. Huff's statements as laid forth in the affidavit, as an initial matter, those statements are inherently self-corroborating. This isn't a situation where an anonymous informant calls in and says, hey, Orville Darby's buying all these guns illegally, and he's got them at his house. You guys should go check it out. And it's not a situation in which Mr. Huff says to law enforcement, you know, I know you caught me on these drug charges, but I can tell you about this guy. And it's not a situation where Mr. Huff says, hey, this guy made me buy all these guns, and you can find them at his house. This is a situation in which Mr. Huff admitted to committing federal crimes, as well as state crimes, in purchasing firearms for other people, and as well, listing the wrong address on his Form 4473s. Beyond that, Your Honor, there was corroboration as to Mr. Darby's residing at that address. In his wallet was a rent receipt dated June 4, 2019, for $600. That was seven days before the traffic stop car chase interaction with the law enforcement, indicating that he was still, at least presently, residing at that address. And going towards Mr. Huff's statement that he had transferred some of those firearms to Mr. Darby's residence. So you just hit on sort of the focus of what my next question is going to be, is that the warrant was targeted at Mr. Darby and his residence. And so officers get there, and they find, of course, Mr. Davis there. They find – at some point, they put him down on the ground and cuff him, and they find apparently some contraband in plain view. I don't know that I have any concern about that. But what is the probable cause for seizing his cell phone, which he indicated was his phone, not Darby's phone? And the officers apparently accepted that representation. There's no evidence that the phone was searched to an arrest of Davis with respect to the drug contraband that was found on his person. So what was the basis for seizing that phone? Well, Your Honor, as an initial matter, the government argued below and continues to argue that the seizure of that cell phone was justified and covered by the search warrant in this case. As is frequently the case in firearms trafficking investigations, evidence of firearms trafficking is often found in letters, which these days are often contained in electronic records. And that is a common-sense judgment that a reasonable magistrate judge reviewing the affidavit… I agree with that. But then the question is, is everybody in that house then subject to having their cell phone seized when the focus of the investigation, when the warrant was issued, was with respect to Darby and Darby alone? Your Honor, in response to that, I would state that while Mr. Davis also did state at the time or at some point, hey, that's my cell phone. And by the time that the federal search warrant for the phone was issued, it appeared to have been corroborated that it was his phone. At the time, there's no evidence in the record, as the challenge below wasn't to the facts in the affidavit, that the phone actually belonged to Mr. Davis. So at that point, these anonymous phones could have been seized under the terms of that warrant, although not searched absent a search warrant, which was later obtained. But regardless, Your Honor, even if we set aside the initial search warrant in this case and we say that it did not cover the seizure of that cell phone, numerous bases arise under which its seizure was appropriate pending acquisition of a search warrant. So as an initial matter, which I keep saying, the agents were present at the time that Mr. Davis was seen concealing evidence of a crime in vents in plain view of officers. And when they retrieved that evidence, it was a bag with individually packaged bags inside. So it was more than one baggie, which is in and of itself indicative of distribution. So at that point, they did have probable cause to believe that there was drug trafficking occurring. Even if at the time that the affidavit was submitted, officers simply expected, based on the information that they had available, that they were likely to come across controlled substances. Further, Your Honors, stepping beyond that, the cell phone itself, once they observed Mr. Davis's behavior, also could have just been seized generally as potentially as because the officers had probable cause to believe that evidence of a crime was contained therein. And in this case, as set forth in Riley v. California, the appropriate step is to obtain a search warrant. And that was done in this case. Once officers did some additional investigation, they went to a federal magistrate judge and obtained a search warrant to actually search the cell phone. Are you arguing that the cell phone was seized pursuant to legitimate probable cause at the outset, or that it was seized incident to arrest, or both? What's the crux of the argument here on this? Your Honor, the crux would be a little bit of both options. In this case, as was set forth below, the challenge to the search warrant was a facial challenge. And as a result, the question was whether or not, not specifically what facts underlying this were disputed, but whether or not the seizure was justified as a matter of law. And in this case, assuming that the phone was found within Mr. Davis's immediate proximity… That's exactly, I think, what I want to get at here. You said assuming that it was found within his proximity. Where is the evidence in the record about where the cell phone was located vis-a-vis where Mr. Davis was located? Yes, Your Honor. And to my review of the record, it is not contained within the record. The evidence that we have as to the location of the phone is as far as I can tell that it was inside the house. Don't we need to know more specifically about where it was to determine whether or not it was seized incident to arrest appropriately? Your Honor, I think that we can make that determination without that fact, although I would much rather be standing here with that information. Because there are multiple alternatives by which that phone still could have been seized legitimately. So, as we've touched on, the commission of another offense in front of officers in plain view, and then the recovery of evidence indicative of drug trafficking. And I believe, to return to the earlier question in a slightly disjointed manner, the only evidence in the record as to where the phone may precisely have been found, I believe, was raised by Mr. Davis below that it may have been in his bedroom. But there was no certainty as to that fact. In the event that it was found in the bedroom where his identification was, also in that room was a closet with a duffel bag inside. And inside the duffel bag were several baggies of controlled substances. So, even if the court were to look at whether or not the seizure of the phone was otherwise justified, there are multiple alternatives by which that seizure would be justified. Finally, your honors, if the court were to determine in this case that the search warrant was not supported by adequate facts sufficient for a magistrate judge exercising reasonable common sense judgment to determine that probable cause existed to search the Salem church residents. As argued below, this isn't the sort of case where the affidavit is so threadbare that a reasonable officer could not rely upon it. And, therefore, the purposes of the exclusionary rule wouldn't be served by excluding the evidence in this case. That sounds like a good faith argument, and I'm wondering whether or not somebody made that argument below. Your honor, I believe it was raised briefly below, and if I could have the court's indulgence, I can find a citation to that. Thank you. Your honor, I believe it wasn't necessarily raised expressly as good faith. But, rather, in connection with the severance doctrine, which I'd be happy to discuss if the court would like to reach that issue. My recollection is that it wasn't raised. And this also brings up the related question that Judge Traxler asked about harmless error, which also apparently wasn't raised. But we have here, it's a guilty plea, right? It's not a trial. And so I'm wondering whether harmless error and or good faith, the first problem is it doesn't appear to have been squarely raised. And, second, in the context of a guilty plea, whether that standard, particularly with respect to harmlessness, would apply. Because it would seem to me that the whole purpose of the conditional guilty plea is to allow the defendant to make a decision as to whether or not he or she wants to go to trial. And so how can we ever say that a Fourth Amendment violation was harmless in that context? I know there's a lot there, and maybe I mixed and matched some things. But the point is that these issues weren't raised below. And so we're now trying to get there, assuming that we've got concerns about the cell phone. You've made some arguments as to why we shouldn't. But do those concepts apply in this context, I guess is what I'm asking. I'm working through that question, Your Honor. And I think it's a point well taken that in any case in which there is a conditional plea, it is a decision that a defendant makes relative to their decision to proceed to trial. But I think when we look at the case as a whole, and I will state that I think some of this would be speculation on my part, as the record doesn't necessarily contain all of the evidence that would have been presented at trial. But much of the evidence in this case, as it related to the controlled substances that would have been found on the phone, would have been superfluous. Mr. Davis was found stealing drugs potentially packaged for redistribution in plain view of law enforcement. And then during that search, law enforcement found in a place where they could have lawfully searched for firearms, more controlled substances in a room where Mr. Davis's identifiers were found. I'm sorry to interrupt, but how do we know that? How do we know that this cell phone was found in a place where the officers might legitimately have searched looking for firearm evidence? We don't know where it was found or where it was located. Your Honor, we don't have evidence as to where the cell phone precisely was found. However, the controlled substances in this case relevant here were found in two primary, three primary places. The first is the bag that was secreted in the HVAC. I understand that. I was just asking about the cell phone. Oh, I apologize, Your Honor, if I was unclear. My question is whether or not that theory would support your argument as to the admissibility of the cell phone. I apologize, Your Honor. Could you repeat your question? My question is, do you argue that the cell phone would have been found anyway because it was in a location where the officers could legitimately search for evidence of a firearm violation? And the reason I ask that question is since we don't know where it was found or where it was located, I want to see how that argument helps you. Your Honor, answering that would certainly require speculation on my part. In as much as without the location, I couldn't tell you if someone could have hidden firearms or ammunition in that or ammunition in that place. I'm sure there is a place where a cell phone could be hidden or you couldn't fit a nine millimeter round. But regardless, I don't believe that we need to reach that point because of the multiple bases by which the cell phone could be seized. Help me out a little bit then. Beside the search warrant, what other legal theory do you have that would make the seizure of the cell phone lawful? Well, Your Honor, assuming that the phone was found, and of course this places heavy weight on the word assuming that the phone was found on Mr. Davis's person or within his immediate proximity, then it could have been seized incident to his lawful arrest. But we don't know that, so that's not a legitimate theory. We don't know where it was found. That's correct, Your Honor. Other than the search warrant, what other theory have you got that you can support with evidence? Your Honor, without knowing the location of the phone, the government would be purely speculating at that point. I thought you were arguing that once the officers found the drugs package, as you say, if they find a cell phone, they can legitimately say that the cell phone was a tool of the trade of a drug trafficker, isn't that? That is the government's argument. However, I do believe that there would be boundaries to that argument. From the record as a whole, there doesn't appear to be any dispute that the phone was seized from within the residence. If you look at the record, there was another suppression motion that was heard on the very same day as the motion in this case, addressing whether or not the search for mobile conveyance that was on the property was proper. And I believe following the line present in that case, had a Domino's delivery driver drove onto the premises with a cell phone, the government would not have been able to seize the Domino's delivery driver's cell phone. So your honor, I would submit that the context of where the phone was found either within Mr. Davis's immediate vicinity or elsewhere in the house as because of probable because probable cause existed to believe that evidence of drug trafficking would be found there and also would support the seizure of the phone. And your honor, beyond that, following this law enforcement didn't simply hook the phone up and crack it with great key law enforcement got a federal search warrant to actually go into the phone to look for evidence. I want to go back earlier. You mentioned as much. I heard you correctly that below in the severance argument, it's your view that you also made a good faith argument sort of. Woven together with the severance argument that I hear you correctly on that. Your honor, I think it was more of a merger in my mind, in the sense that the severance argument brings in the same concepts of bad faith or lack of misstatements in the affidavit. Wherein under the severance argument, absent a showing of bad faith by the government or false statements in the affidavit severance is appropriate. So, you're not arguing, you're certainly not telling us that you explicitly raised the good faith exception below. Correct. I do not believe that the government did. I believe that the district court may have raised it in a footnote. However, I don't believe it was expressly raised by the government. Do you have anything else Ms. Hurney? Just a brief conclusion, your honor. For the reasons set forth in the brief and in argument today, the government would ask that the court find that the district court did not err in determining that there was a substantial basis upon which probable cause existed and affirm the district court's decision. Thank you very much. Mr. Stone? Just briefly, your honor. In regard to the record in the cell phone location, if we look at appendix 32, top of the page number 11, Agent Cox just lists that the phones were recovered from the residence and seized for evidence. And then, I think it's appendix 91, paragraph 25, three of the devices were recovered from the residence. So, again, I may not be positive, your honor, but when the officers executed the search warrant, Mr. Davis was in the residence and then two females, Nancy Bennett and Cheyenne Gardner, were in the residence. So, I don't know if those two additional phones may have belonged to the other people in the residence, but jumping to just observing Mr. Davis in the house, pushing a bag into an HVAC, then my recollection from the discovery, the quantity of controlled substances found on his person, I mean, they're not so vast that you would automatically presume that somebody who's distributing drugs is opposed to somebody who's possessing the drugs for their own use. I, again, it wasn't an issue that we developed below as to where the phone was located. I know that the agents indicated that Mr. Davis was sitting in the living room area of the residence. There were two bedrooms that were searched, but I can't point to in the record specifically where the phone was seized. But, again, even though the officer saw Mr. Davis trying to conceal some drugs, I mean, at that point in time, they have no information to establish that he's actively distributing any controlled substances. So, I mean, clearly, they don't have probable cause to seize a phone if it's just sitting there. It could be sitting on the counter or something. I mean, again, there's nothing inherently criminal about it that would warrant seizure, especially under the search warrant. What about when they found the other drugs? At that point, did they have probable cause to seize the phone? Well, Judge, the claim is that there was a duffel bag in a bedroom, and within the duffel bag, there were quantities of controlled substances. I believe from reviewing the reports, I believe there were, like, 20 grams and 20 grams, and then I think some substance that I believe they thought was heroin that wasn't. So, I mean, even that – and that's not a huge amount of drugs relative to many cases. And, you know, notwithstanding that, what link could the officers make to, hey, we found this, so we believe your phone, even though we don't even know who you are and we just met you today, and we have no evidence of you actually actively engaging in drug activity, we're going to seize your phone. I mean, I think the officers in the government decided that the drugs in the duffel bag must be Mr. Davis's because they found his ID in that room. Within that room were also two females laying on a bed. I mean, the government does have information suggesting Mr. Darby rented this residence, but, you know, to automatically attribute that to Mr. Davis, I mean, he didn't give a statement. He didn't admit, you know, what they found were his. But, again, search warrant has no probable cause for a cell phone. Seizing the phone based upon what they observed in the residence wasn't supported by probable cause. Thank you. All right, thank you, Mr. Stone. I note that you are a quarter pointed and I want to thank you for taking this case on. We could not do the work that we do without lawyers who are willing to take on these important cases. And I appreciate your doing that. Thank you. And I appreciate the government's argument as well. We're going to come down, Judge Walker and I are going to come down to greet counsel. Judge Traxler will give you all a virtual handshake, I think. We'll go on to our next.
judges: Albert Diaz, William B. Traxler Jr., Jamar Kentrell Walker